**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LABORERS' COMBINED FUNDS OF WESTERN PENNSYLVANIA, et al.,** | ) CIVIL ACTION NO.  18-1708 |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **ADAM J. LESSESKI,** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| **CONCRETE CORING COMPANY, INC. and LARRY E. TREADWAY**, | ) |
| | ) |
| | ) |
| Crossclaim Plaintiffs, | ) |
| v. | ) |
| | ) |
| **ADAM J. LESSESKI,** | ) |
| | ) |
| Crossclaim Defendant. | ) |
| | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

CONTI, Senior District Judge

**I.      Introduction**

      This case was initiated by plaintiff Laborers' Combined Funds of Western

Pennsylvania ("Laborers' Combined Funds") under § 502 and § 515 of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132,

1145, and § 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §

185. Laborers' Combined Funds settled their claims against crossclaim plaintiffs Larry

E. Treadway ("Treadway") and Concrete Coring Company, Inc. ("Concrete Coring").

The remaining claims in this case are asserted by Laborers' Combined Funds against

defendant and crossclaim defendant Adam Lesseski ("Lesseski") and by Treadway and Concrete Coring against Lesseski.

Currently pending before the court are several motions filed by either Treadway and Concrete Coring or Lesseski: (A)Treadway and Concrete Coring filed a motion to enforcement settlement agreement (ECF No. 76); (B) Treadway and Concrete Coring filed a motion to compel (ECF No. 65); (C) Lesseski filed a motion for stay (ECF No. 70); and (D) Treadway and Concrete Coring filed a motion for sanctions (ECF No. 83). With respect to the motion to enforce settlement, Treadway and Concrete Coring argue that they reached an agreement with Lesseski to settle this case. Lesseski denies those allegations and argues that he did not accept their offer to settle this case.

For the reasons set forth in these findings of fact and conclusions of law, the motion to enforce settlement agreement will be granted. Treadway and Concrete Coring satisfied their burden to show their settlement agreement with Lesseski should be enforced by this court. Under those circumstances, the motion to compel filed by Treadway and Concrete Coring will be denied as moot. The motion for stay filed by Lesseski will be denied as moot because the criminal case against him is resolved. The motion for sanctions filed by Treadway and Concrete Coring against Lesseski will be denied because the circumstances of this case do not warrant sanctions under Federal Rule of Civil Procedure 11.

## II.     Procedural History

On December 28, 2018, Laborers' Combined Funds filed a complaint against Treadway, Concrete Coring, and Lesseski. (ECF No. 1.) In the complaint, Laborers' Combined Funds alleged that, among other things:

- Concrete Coring failed to pay wage deductions and fringe benefits contributions to Laborers' Combined Funds in violation of a labor agreement entered between a union affiliated with Laborers' Combined Funds (id. ¶ 1);

- Treadway was the president of Concrete Coring (id. ¶ 14);

- Lesseski was the vice president of Concrete Coring (id. ¶ 14);

- Treadway and Lesseski were responsible for, among other things, overseeing the collection of monies payable to Concrete Coring from the work performed by the union affiliated with Laborers' Combined Funds (id. ¶¶ 15-17); and

- Treadway and Lesseski, who were fiduciaries to Laborers' Combined Funds prioritized payment of corporate expenses that personally befitted them over payment to Laborers' Combined Funds (id. ¶ 21).

Based upon the foregoing allegations, Laborers' Combined Funds asserted three claims:

- **COUNT I**: an ERISA collection action against Concrete Coring (ECF No. 1. ¶ 1);

- **COUNT II**: an ERISA breach of fiduciary action against Treadway and Lesseski (id. ¶ 13); and

- **COUNT III**: a Pennsylvania state common law claim of conversion against Treadway and Lesseski (id. ¶ 30).

On September 16, 2019, Lesseski filed an answer to the complaint. (ECF No. 41.) On the same day, Concrete Coring and Treadway filed an answer to the complaint, affirmative defenses, and crossclaims against Lesseski. (ECF No. 42.) Concrete Coring and Treadway alleged that Lesseski actively concealed from Treadway the true financial status of Concrete Coring and that he was stealing money from Concrete Coring. (Id. ¶ 65.) According to Treadway, he was unaware of Lesseski's fraudulent handling of Concrete Coring. (Id.) Treadway asserted against Lesseski claims of fraud, negligent misrepresentation, civil conspiracy, and indemnity and contribution. (Id.) On November

13, 2019, Lesseski filed an answer to the crossclaims asserted against him by Concrete Coring and Treadway. (ECF No. 54.)

On December 20, 2019, the court was informed that the case was settled between Laborers' Combined Funds and Concrete Coring and Treadway. (ECF No. 59.) On the same day, the court was informed that there were pending criminal charges against Lesseski, and Lesseski requested a stay of the case. The court did not grant the request; rather, it continued the initial case management conference. On March 18, 2020, the court held an initial case management conference with respect to the remaining claims in the case, i.e., the claims asserted by Laborers' Combined Funds against Lesseski and the claims asserted by Concrete Coring and Treadway against Lesseski. The close of fact discovery was set for May 21, 2020.

 On May 5, 2020, Treadway and Concrete Coring filed a motion to compel discovery responses and a brief in support of the motion. (ECF Nos. 65, 66.) On May 19, 2020, Lesseski filed a motion to stay the case. (ECF No. 70.)

On May 21, 2020, the court held a hearing at the close of fact discovery. The court heard argument from the parties with respect to the motion to stay and requested supplemental briefing with respect the factors set forth in Walsh Securities v. Cristo Property Management, 7 F.Supp.2d 523 (D.N.J. 1998). The court continued the hearing until July 16, 2020. The parties filed supplemental brief and exhibits. (ECF Nos. 72, 73, 75, 78.)

On July 13, 2020, Concrete Coring and Treadway filed a motion to enforce settlement agreement, which included exhibits attached to the motion, and a brief in

support of the motion. (ECF Nos. 76-78.) On July 14, 2020, the continued hearing on the motion to stay scheduled for July 16, 2020, was continued until July 21, 2020.

On July 21, 2020, the court held the continued hearing to address the motion to compel and the motion to stay. The court continued the hearing on the motion to compel and the motion to stay until August 26, 2020, because the criminal charges against Lesseski were pending. On July 22, 2020, Lesseski filed a response in opposition to the motion to enforce settlement agreement. (ECF No. 79.) The hearing scheduled for August 26, 2020, was continued several times by the court and once at the request of counsel.

On October 5, 2020, Lesseski filed a notice of resolution of his criminal case to inform the court that the criminal case related to this case "has been resolved." (ECF No. 82 ¶ 2.) Lesseski wrote that he would work with the other parties to reach an agreement on a proposed case management order to resume discovery. (Id. ¶ 3.)

On November 9, 2020, Concrete Coring filed a motion for sanctions (ECF No. 83) and a brief in support of the motion (ECF No. 84). Concrete Coring requested this court to impose sanctions upon Lesseski for refusing to withdraw his opposition brief to the motion to enforce sanctions after Treadway performed his obligations under the alleged settlement agreement in this case by not seeking restitution from Lesseski in the criminal case, which had been resolved in Lesseski's favor. (ECF No. 84.)

On November 24, 2020, the court granted Concrete Coring and Treadway's motion for leave to file a reply to the motion to compel, which they filed the same date. (ECF No. 88.) On November 25, 2020, the parties filed a proposed case management order, pursuant to which fact discovery will be completed at or about the beginning of

April 2021. (ECF No. 89.) On November 27, 2020, Lesseski filed a response in opposition to the motion for sanctions. (ECF No. 90.)

On December 3, 2020, the court held an evidentiary hearing via video conference with respect to the motion to enforce settlement. Concrete Coring and Treadway presented the testimony of their counsel, David Strassburger ("Strassburger") and entered twelve exhibits into evidence. The court continued the hearing in order for a subpoena to be issued to Laura Pitchford ("Pitchford"), the assistant district attorney for the Butler County District Attorney's Office who prosecuted Lesseski in state court, (H.T. 12/15/2020 (ECF No. 96) at 15-16), and for Treadway to attend the hearing. (H.T. 12/2/2020 (ECF No. 96) at 23-29.)

On December 15, 2020, the court held the continued evidentiary hearing via video conference. Concrete Coring and Treadway presented the continued testimony of Strassburger and the testimony of Pitchford and Treadway. They entered two additional exhibits into evidence. The court ordered the transcript at the joint cost of Concrete Coring, Treadway, and Lesseski. On January 4, 2021, Concrete Coring and Treadway and Lesseski filed their proposed findings of fact and conclusions of law.

The motion to enforce settlement, motion to compel, motion for stay, and motion for sanctions are now ripe for disposition.

### III.   Discussion

#### A. Findings of Fact

**FOF 1.**      On December 19, 2019, Laborers' Combined Funds and Concrete Coring and Treadway settled this case with respect to the claims asserted by Laborers'

Combined Funds against Concrete Coring and Treadway. (ECF No. 59); (H.T. 12/2/2020 (ECF No. 92) at 6.)

 **FOF 2.** Following the mediation between Laborers' Combined Funds and Concrete Coring and Treadway, Strassburger "opened up a settlement dialogue" with counsel for Lesseski, Charles Hoebler ("Hoebler"). (H.T. 12/2/2020 (EF No. 92) at 6.)

 **FOF 3.** As part of those settlement discussions, Concrete Coring and Treadway wanted Lesseski to execute a rescission agreement, which would resolve their dispute about Lesseski's "purported interest in Concrete Coring."[1] (Id. at 6-7.)

 **FOF 4.** By December 2019, criminal charges were pending against Lesseski in Butler County related to the conduct alleged by the parties in this case. (ECF No. 70; Ex. 4; H.T. 12/2/2020 (ECF No. 92) at 9.)

 **FOF 5.** According to Lesseski: "[He] was charged with fifty four [sic] counts of Theft, Forgery, and Conspiracy by the Pennsylvania State Police in Butler County at OTN: U 831260-3." (ECF No. 70 ¶ 7.)

 **FOF 6.** Hoebler represented Lesseski in those proceedings. (H.T. 12/2/2020 (ECF No. 92) at 21-22.)

 **FOF 7.** On December 21, 2019, Strassburger emailed Hoebler a proposed rescission agreement for review and comment. (Id. at 6-7, Ex. 1.)

 **FOF 8.** On December 27, 2019, Hoebler responded to Strassburger via email that most of the language in the proposed rescission agreement was acceptable

---

[1] Strassburger testified that prior to filing this lawsuit, Treadway executed an agreement transferring all the stock of Concrete Coring to Lesseski. (H.T. 12/15/2020 (ECF No. 96) at 10.)

to him and to "finish it up with the specifics on the full withdrawal of the cross-claim."

(Ex. 2; H.T. 12/2/2020 (ECF No. 92) at 7.)

**FOF 9.**      On January 18, 2020, Hoebler emailed Strassburger asking if

Concrete Coring and Treadway agreed to withdraw the crossclaim asserted against

Lesseski in exchange for Lesseski signing the rescission agreement. (Ex. 3; H.T.

12/2/2020 (ECF No. 92) at 8.)

**FOF 10.**      On January 19, 2020, Strassburger responded to Hoebler by

sending via email an amended proposed rescission agreement, which included, among

others, the following two paragraphs:

> 7. Within ten (10) days of the execution of this Rescission Agreement by
> Lesseski and its delivery to counsel for Treadway, the Company, Treadway,
> and Lesseski shall file a Stipulation of Dismissal of Cross-Claims in the form
> attached hereto as Exhibit A.
>
> 8. Nothing in this Rescission Agreement constitutes an admission of Adam
> Lesseski of any wrongdoing. Lesseski denies any and all wrongdoing.
> Likewise, nothing in this Rescission Agreement shall in any way prejudice
> the rights of the Commonwealth, the Company and Treadway in any
> pending or future criminal prosecution of Lesseski or Kara Lesseski,
> including but not limited to those pending at Com. v. Adam Lesseski, MJ-
> 50303-CR-0000259-2019, and Com. v. Kara Lesseski, MJ-50303-CR-
> 0000260-2019. All such rights are preserved. By way of example and not
> limitation, nothing herein shall prevent the Commonwealth, the Company
> and Treadway from asserting that the Company and Treadway are crime
> victims and/or entitled to restitution.

(Ex. 4; H.T. 12/2/2020 (ECF No. 92) at 8-9.)

**FOF 11.**      Strassburger added paragraph 8 "[b]ecause [he] didn't want the

dismissal of the cross-claim [sic] to be regarded in the criminal case as some type of

collateral estoppel on any issue that would be involved in that case." (H.T. 12/15/2020

(ECF No. 96) at 8.)

**FOF 12.**      There is no evidence of record that Hoebler and Strassburger discussed the withdrawal of the criminal charges against Lesseski prior to Strassburger emailing Hoebler the amended proposed rescission agreement. (H.T. 12/15/2020 (ECF No. 96) at 8.)

**FOF 13.**      On February 4, 2020, Strassburger followed up via email with Hoebler with respect to the status of the amended proposed rescission agreement. (Ex. 5; H.T. 12/2/2020 (ECF No. 92) at 9-10.)

**FOF 14.**      On February 11, 2020, Strassburger again emailed Hoebler to request an update about the amended proposed rescission agreement. (Ex. 5; H.T. 12/2/2020 (ECF No. 92) at 10.)

**FOF 15.**      On the same day, Hoebler emailed the following response to Strassburger:

This is our offer:

1.      The action against Adam by the union is dismissed, with prejudice.

2.      The cross-claim against Adam is dismissed, with prejudice.

3.      All criminal charges against Adam are withdrawn.

In exchange, Adam will relinquish his rights in Concrete Coring. Let me know. Thanks.

(Ex. 6.)

**FOF 16.**       On the same day, Strassburger responded via email to Hoebler: "No, thank you." (Ex. 7.)[2]

---

[2]      Strassburger testified that he was "disappointed" in Hoebler's offer made on February 11, 2020. (H.T. 12/20/2020 (ECF No. 92.) at 10-11.) He explained:

It was obvious that we did not have a deal at that point. He was asking for things that were far outside of my control. I obviously don't represent the

**FOF 17.** After Hoebler sent Strassburger the email offer on February 11, 2020, and Strassburger rejected the offer the same day, Strassburger and Hoebler did not discuss Hoebler's demand that "[a]ll criminal charges against…[Lesseski be] withdrawn". (H.T. 12/15/2020 (ECF No. 96) at 10.)

**FOF 18.** After Strassburger and Hoebler were unable to settle this case, the litigation continued and, from February 12, 2020 until May 15, 2020, there were no further discussions about settlement between Hoebler and Strassburger. (H.T. 12/2/2020 (ECF No. 92) at 11.) Laborers' Combined Funds, and Concrete Coring and Treadway sent written discovery requests to Lesseski. (Id.) Concrete Coring and Treadway noticed the depositions of Lesseski, Kara Lesseski, and Concrete Coring's former counsel, Matthew Kalina ("Kalina"). (Id.)

**FOF 19.** On May 5, 2020, Concrete Coring and Treadway filed a motion to compel against Lesseski arguing, among other things, that Lesseski failed to respond to the first set of interrogatories issued on March 11, 2020. (ECF No. 65 ¶¶ 7-10.)

**FOF 20.** The depositions of Lesseski, Kara Lesseski, and Kalina were scheduled for the week following May 15, 2020. (H.T. 12/2/2020 (ECF No. 92) at 12.)

**FOF 21.** On May 15, 2020, Hoebler emailed Strassburger and suggested that Lesseski, Treadway, and Concrete Coring jointly request a stay of this litigation because the criminal charges against Lesseski were pending. (Ex. 8.) Hoebler explained that Lesseski's formal arraignment on his criminal charges was scheduled for June 4, 2020. (Id.)

---

> union. I obviously don't control the Butler County District Attorney. It sounded like we were going to have to litigate the case.

(Id.)

**FOF 22.**     On the same day, i.e., May 15, 2020, Strassburger responded to

Hoebler via email:

> When we last communicated on this matter, you demanded a dismissal of the charges against your client. That relief was not in our control, and never will be. However, we can waive restitution, so I have amended the agreement to include a mutual general release and waiver of restitution in the pending criminal cases. Please let me know if this draft is acceptable. If so, I will circulate a signature copy with attachments.

(Ex. 9; H.T. 12/2/2020 (ECF No. 92) at 13-14.) Strassburger emailed Hoebler the second

amended rescission agreement[3] in a subsequent email. (H.T. 12/2/2020 (ECF No. 92) at

14.) Strassburger sent Hoebler the foregoing emails "to try to restart the settlement

communications in light of…[Hoebler's] request for a stay of discovery, which was not

in…[Strassburger's] client's [sic] best interest." (H.T. 12/2/2020 (ECF No. 92) at 13-14.)

**FOF 23.**     Strassburger's email to Hoebler dated May 15, 2020, was the first

time Treadway and Concrete Coring offered to waive restitution with respect to Lesseski's

pending criminal case. (H.T. 12/2/2020 (ECF No. 92) at 14.)

**FOF 24.**     Between May 15, 2020, and May 20, 2020, Kalina and Lesseski were

deposed.  (H.T. 12/2/2020 (ECF No. 92) at 14.) Lesseski asserted his Fifth Amendment

rights during his deposition. (Id.)

**FOF 25.**     On May 19, 2020, Lesseski filed a motion to stay this case in which

he asserted his right to not incriminate himself under the Fifth Amendment to the United

States Constitution. (ECF No. 70.)

**FOF 26.**     On May 20, 2020, Hoebler emailed Strassburger and informed him

that Hoebler reached out to counsel for Laborers' Combined Funds "to see whether there

---

[3]     The second amended rescission agreement is two and one-half pages and contains nine paragraphs. (Ex. 9.)

is a resolution possible between the Union Fund and Lesseski." (Ex. 10.) Hoebler wrote:
"I'd also like to see if you and I can hammer something out before tomorrow. Can we talk
later today?" (Id.)

**FOF 27.**      Strassburger and Hoebler via email exchanged telephone numbers
and agreed to talk to each other that evening. (Ex. 10.)

**FOF 28.**      Strassburger and Hoebler talked to each other via telephone the
evening of May 20, 2020. (H.T. 12/2/2020 (ECF No. 92) at 16-17.) Strassburger
explained:

> Mr. Hoebler told me that he was trying to get a deal worked out with
> Butler County Assistant District Attorney Laura Pitchford. He was trying to
> get her to agree to an ARD, which is a common term used in state criminal
> proceedings, Accelerated Rehabilitative Disposition. And I was skeptical
> that he would be able to pull that off because there were so many charges
> pending against Mr. Lesseski in different cases.
>
> I told him that the waiver of restitution was a significant benefit to him.
> I thought he would be able to get restitution -- I'm sorry. I thought -- I told
> him he would be able to get probation if we waived restitution. He asked me
> why I thought that.
>
> One of my partners in this law firm, Laura Gutnick, is a former ADA.
> I had been talking to her about whether she thought that would be a
> possibility with a nonviolent crime in the COVID era. She thought that would
> be a good chance for him. So I was trying to convince him that that was a
> good deal. I can't say that he said yes at that time, but he was going to think
> about it.

(Id. at 16-17; H.T. 12/15/2020 (ECF No. 96) at 7-8.)

**FOF 29.**      During the morning of May 21, 2020, Strassburger and Hoebler had
another telephone call. (H.T. 12/2/2020 (ECF No. 92) at 17.) Strassburger explained:

> [Hoebler] was going to try to get Laura Pitchford on the phone as soon as
> he could and see if he could work something out. We didn't have it
> completely worked out at that point, but we were moving in the right
> direction.

(Id.)

**FOF 30.**   On June 16, 2020, Treadway and Concrete Coring received restitution forms in the mail from the District Attorney's Office of Butler County with respect to Lesseski's criminal case. (H.T. 12/2/2020 (ECF No. 92) at 18.)

**FOF 31.**   As discussed above, the second amended rescission agreement, which Strassburger attached to the email dated June 17, 2020, provided, among other things, that Lesseski would relinquish his ownership in Concrete Coring. (Ex. 11.) In exchange, Concrete Coring and Treadway would stipulate to the dismissal of the crossclaims against Lesseski in this case and waive their rights to seek restitution from Lesseski in his pending criminal case in Butler County. (Id.)

**FOF 32.**   On the same day, i.e., June 17, 2020, Hoebler responded to Strassburger's email:

> **We do have a deal as we discussed.** I talked briefly with ADA Laura in Butler and we need to hammer things out. I'll plan a meeting with her ASAP.

(Ex. 11 (emphasis added).)

**FOF 33.**   According to Strassburger, after receiving the foregoing response from Hoebler, he believed they reached an agreement[4] to settle this case between Treadway and Concrete Coring and Lesseski. (H.T. 12/15/2020 (ECF No. 96) at 6.) His understanding of the terms of the agreement were as follows:

> That…[Lesseski] would sign the rescission paperwork, [Treadway and Concrete Coring] would waive restitution in the criminal proceedings in Butler County, and that…[Hoebler] needed additional time to try to work something out with Ms. Pitchford.

---

[4]   Treadway understood that the claims between him and Lesseski were settled in this case. (H.T. 12/15/2020 (ECF No. 96) at 23.) He understood the terms of the agreement as follows: "[I]f I dropped -- waived restitution and dropped the claims within this case, we had a deal." (Id.)

(Id. at 7.)

**FOF 34.**    Later in the day on June 17, 2020, Strassburger wrote an

email to Hoebler:

> [P]lease have your client execute the attached documents to effectuate the
> settlement. Let us know if you have any questions.

(ECF No. 76-3 at 2.)

**FOF 35.**    On June 30, 2020, counsel for Concrete Coring and Treadway

emailed counsel for Lesseski and wrote:

> Please let me know when I can expect to receive a signed Rescission
> Agreement and Release. Thanks.

(Ex. 12.)

**FOF 36.**    On July 2, 2020, Hoebler via email responded:

> Before we finalize a rescission, I need to discuss the resolution of the Butler
> County criminal case with ADA Laura Pitchford. I have emailed her twice to
> set up a time to discuss it with no response. I let a voicemail for her today.
>
> I would like to have this resolved before the next conference with Judge
> Conti. I will try to call Ms. Pitchford against this afternoon. Have you talked
> to her?

(Ex. 12.) Strassburger via email replied: "I have not talked to her in months." (Id.)

**FOF 37.**    Hoebler did not inform Strassburger during their communications on

July 2, 2020, that resolution of the criminal charges was a condition to their settlement.

(H.T. 12/2/2020 (ECF No. 92) at 20.)

**FOF 38.**    Hoebler via email responded to Strassburger: "Laura seemed willing

to work with us when I talked to her at the pretrial conference almost a month ago. I will

ramp up my efforts to get ahold of her today and tomorrow." (Ex. 12.)

**FOF 39.**    Strassburger testified that Hoebler's emails dated July 2, 2020, were "consistent" with what they previously discussed. (H.T. 12/2/2020 (ECF No. 92) at 18-20.) He explained:

> [Hoebler] needed to hammer out a deal with ADA Laura Pitchford in order to have the charges against his client dismissed. I was certainly amenable to giving him more time to do that, but the deal was not contingent upon him persuading Laura Pitchford of the error, allegedly, of her ways.
> …
> Not only did I believe it, I knew that [this case]…was settled. We had a deal. He needed a little more time to work it out with Laura Pitchford. I was happy to give him that time.

(H.T. 12/2/2020 (ECF No. 92) at 19.)

**FOF 40.**    Treadway did not return the restitution forms to the district attorney's office with respect to Lesseski's criminal case in Butler County because, according to Strassburger, "[they] had a deal." (H.T. 12/2/2020 (ECF No. 92) at 19; H.T. 12/15/2020 (ECF No. 96) at 25-26.)

**FOF 41.**    Hoebler did not communicate to Strassburger that resolution of Lesseski's criminal charges were a condition of the settlement of this case. (H.T. 12/2/2020 (ECF No. 92) at 20.)

**FOF 42.**    On July 13, 2020, Lesseski filed a supplemental brief in support of his motion to stay this case pending the outcome of his criminal proceedings. (ECF No. 72.) Strassburger testified that he "was extremely surprised" by Lesseski filing the supplemental brief, which "felt like repudiation [of the rescission agreement] to…[him]." (H.T. 12/2/2020 (ECF No. 92) at 21.)

**FOF 43.**    On July 13, 2020, Treadway and Concrete Coring—in response to Lesseski filing the supplemental brief—filed the motion to enforce settlement, which is currently pending before the court. (ECF No. 76); (H.T. 12/2/2020 (ECF No. 92) at 21.)

15

**FOF 44.**     At some point after Treadway and Concrete Coring filed the motion to enforce settlement in this case, Hoebler filed a motion to "challenge the charges in Butler County" in Lesseski's criminal case. (H.T. 12/2/2020 (ECF No. 92) at 2.)

**FOF 45.**     Pitchford did not participate in the discussions between Strassburger and Hoebler about settling this case. (H.T. 12/15/2020 (ECF No. 96) at 14.)

**FOF 46.**     Pitchford spoke with Strassburger about Treadway and Concrete Coring waiving their rights to request restitution, and she spoke with Hoebler about a "plea resolution" with respect to the state-court criminal charges against Lesseski. (H.T. 12/15/2020 (ECF No. 96) at 18.)

**FOF 47.**     At the time Pitchford and Hoebler discussed a plea deal, Pitchford already knew that Treadway and Concrete Coring would not seek restitution from Lesseski. (Id. at 21-22.)

**FOF 48.**     During plea negotiations, Hoebler informed Pitchford that his client would plead no contest to counts 52 and 54 and said to Pitchford: "No restitution; right?" (H.T. 12/15/2021 (ECF No. 96) at 20.) Pitchford instructed Hoebler that he was correct; Treadway told her that he would not seek restitution from Lesseski. (Id. at 20-22.)

**FOF 49.**     Pursuant to the plea deal reached by Pitchford and Hoebler, Lesseski would plead no contest to 2 counts of the *54 counts* that were filed against him and be sentenced to, among other things, a 24-month term of probation. (Ex. 13.)

**FOF 50.**     Pitchford testified in this case about how her prosecuting decisions with respect to Lesseski were impacted by Treadway and Concrete Coring waiving their rights to seek restitution:

> [I]t factored in in that we're not going to spend a lot of time prosecuting a case where the victims are not seeking restitution. So it did play into

pleading it down and resolving the case. If a victim is seeking an ample amount of restitution and that's a bigger issue, then we are going to take it to trial if we can't resolve it. But we're more apt to offer a better plea agreement if they're not seeking restitution, because we have to look at the cost of prosecution on the county.

(H.T. 12/15/2020 (ECF No. 96) at 17.)

**FOF 51.**     Based upon the foregoing, when Pitchford and Hoebler discussed Lesseski's plea deal, Pitchford and Hoebler *both knew* that Treadway and Concrete Coring would not seek restitution from Lesseski.

**FOF 52.**     On September 10, 2020, a hearing with respect to Lesseski's state charges was held in the Butler Country Court of Common Pleas. (Ex. 14.) During the hearing, Pitchford made an "oral motion to amend the information at Counts 52 and 54, 52 being theft by deception, and 54 being conspiracy to commit the same, both to be graded as misdemeanors of the second degree." (Id.) The court granted the oral motion, which effected a dismissal of all counts except for counts 52 and 54. (Id.)

**FOF 53.**     Lesseski entered pleas of no contest to count 52 (theft by deception) and count 54 (conspiracy to commit theft by deception) of the 54-count indictment, and the court sentenced him on those two counts. (Ex. 14; ECF No. 70 ¶ 7.)

**FOF 54.**     During the hearing, Lesseski pleaded "no contest" to "theft by deception, a misdemeanor of the second degree" and "conspiracy to commit theft by deception, a misdemeanor of the second degree." (Ex. 14 at 3-6.)

**FOF 55.**     Before proceeding to the sentencing portion of the hearing, the following exchange took place between the court and the counsel:

THE COURT: What's the deal with restitution?

MR. HOEBLER: There's no restitution, Your Honor.

MS. PITCHFORD: That would be correct, Your Honor. We're not seeking restitution in this case. And that was the decision made by Concrete Coring Company and Larry Treadway.[5]

(Ex. 14 at 6.)

**FOF 56.** Lesseski was sentenced to a term of probation of twenty-four months, a fine of $100.00, and ordered to complete fifty hours of community service. (Ex. 13.)

**FOF 57.** The resolution of Lesseski's criminal case was "entirely consistent" with the agreement Strassburger reached with Hoebler with respect to this case.[6] (H.T. 12/15/2020 (ECF No. 96) at 5-6.) Treadway and Concrete Coring did not seek restitution from Lesseski as part of his criminal case, and Lesseski received the "favorable deal he was looking for[,]" i.e., Lesseski pleaded no contest to 2 counts of the *54 counts* that were filed against him and he was sentenced to, among other things, a 24-month term of probation. (Ex. 13.)

**FOF 58.** As discussed above, on October 5, 2020, Lesseski filed a notice of resolution of criminal case with this court, which advised the court that Lesseski's criminal case had been resolved. (ECF No. 82.)

## IV.   Conclusions of Law

### A.  Procedural Law

---

[5]   During the morning of Lesseski's criminal hearing, Treadway spoke with Pitchford about his decision to not seek restitution from Lesseski. (H.T. 12/15/2020 (ECF No. 96) at 23, 24.)

[6]   Treadway waived his right to seek restitution because "[i]t was…[his] understanding that as part of the rescission agreement, if…[he] waived restitution, that [he and Lesseski] had a deal." (H.T. 12/15/2020 (ECF No. 96) at 23.) Treadway would not have waived his right to seek restitution if he did not believe there was a settlement in this case. (Id. at 23-24.)

COL 1.      The burden of proof is on the proponent of the settlement agreement to prove the existence of an enforceable contract. Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 n.6 (3d Cir. 2009)

COL 2.      "'Where material facts concerning the *existence or terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.'" Saudi Basic Indus. Corp. v. Exxon Corp., 364 F.3d 106, 113 (3d Cir. 2004) (quoting *Tiernan v. Devoe,* 923 F.2d 1024, 1031 (3d Cir. 1991)) (emphasis in original).

COL 3.      "'On the other hand, no hearing is necessary where there is no dispute as to the existence of a settlement.'" Tiernan, 923 F.2d at 1031 (quoting Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988)) (finding summary enforcement appropriate).

COL 4.      "[W]hether there was any disputed issue of material fact as to the validity of the settlement agreements—is similar to that which any court must address when ruling on a motion for summary judgment." Tiernan, 923 F.2d at 1031.

COL 5.      The proponent of the settlement agreement "must show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law." Columbia Gas Transmission, LLC v. 520.32 Acres, 188 F.Supp.3d 500 (W.D. Pa. 2016).

COL 6.      The court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

COL 7.        In other words, the court must treat the nonmovant's assertions as true and grant the motion to enforce settlement agreement only if the movant is entitled to relief as a matter of law. <u>Tiernan</u>, 923 F.2d at 1032.

COL 8.        "As with motions for summary judgment, [however,] the nonmovant must provide evidentiary support for any assertions on which it wishes to rely in opposing a motion to enforce settlement." <u>Dugan v. O'Hara</u>, 125 F. Supp. 3d 527, 535 (E.D. Pa. 2015).

COL 9.        State law governs the validity and enforceability of settlement agreements because settlement agreements are contracts. <u>Shell's Disposal & Recycling, Inc., v. City of Lancaster</u>, 504 F. App'x 194, 200 (3d. Cir. 2012).

COL 10.        Here, Pennsylvania law governs the validity of the alleged settlement agreement; indeed, Lesseski did not dispute Treadway and Concrete Coring's assertions about the applicability of Pennsylvania law to their motion to enforce settlement.

B. **Substantive Law**

COL 11.        "Under Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." <u>Channel Home Ctrs. v. Grossman</u>, 795 F.2d 291, 298–99 (3d Cir. 1986)).[7] <u>Id.</u>

---

[7]        There also must be a showing of consideration. <u>Channel Home</u>, 795 F.2d at 299. "Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.'" <u>Id.</u> (quoting <u>Curry v. Estate of Thompson</u>, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)). Here, the parties do not dispute that consideration was shown. This court, therefore, need not address it. <u>See</u> <u>Am. Eagle</u>, 584 F.3d at 582 n.5 (noting that the parties did not dispute consideration so the court did not address it).

**COL 12.**     One district court has explained:

> "An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." <u>Green v. John H. Lewis & Co.</u>, 436 F.2d 389, 390 (3d Cir.1970). "Where the parties have agreed on the essential terms of a [settlement agreement], the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." <u>Mazzella v. Koken</u>, 559 Pa. 216, 739 A.2d 531, 536 (1999) (internal citations omitted); <u>see</u> <u>Thomas v. Univ. of Pa.</u>, No. 06–1916, 2007 WL 2891739, at *2 (E.D.Pa. Oct. 2, 2007) ("A settlement agreement is still binding even if ... a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." (internal quotation marks omitted)). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside." <u>Id.</u> (internal citation omitted).

<u>Dugan v. O'Hara</u>, 125 F. Supp. 3d 527, 536 (E.D. Pa. 2015).

### a.  <u>Manifestation of an Intention to be Bound</u>

**COL 13.**     "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." <u>Espenshade v. Espenshade</u>, 729 A.2d 1239, 1243 (Pa. Super. Ct. 1999). In other words, "a true and actual meeting of the minds is not necessary to form a contract." <u>Am. Eagle</u>, 584 F.3d at 582.

**COL 14.**     "'[I]t is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract.'" <u>Am. Eagle</u>, 584 F.3d at 582 (quoting <u>Channel Home Ctrs.</u>, 795 F.2d at 298).

**COL 15.**     "On the other hand, however, 'parties may bind themselves contractually although they intend, at some later date, to draft a more formal document.'" <u>Id.</u> (quoting <u>Goldman v. McShain</u>, 247 A.2d 455, 458 (Pa. 1968).

**COL 16.**       "Thus, '[m]utual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof....'" Id. (quoting RESTATEMENT (FIRST) OF CONTRACTS § 26 (1932)).

**COL 17.**       Signatures are not required for the court to find the parties objectively manifested their intent to be bound by an agreement. Am. Eagle, 584 F.3d at 584 ("Signatures are not dispositive evidence of contractual intent.").

**COL 18.**       A party's statements may indicate the party's objective intent to be bound by an agreement. Am. Eagle, 584 F.3d at 584 (finding a party's statement "we have a deal" that was made to the opposing party indicated the party's "intent to contract in clear, objective terms").

**COL 19.**       Here, the evidence of record shows that Treadway and Concrete Coring and Lesseski—via their respective counsels and through their email communications—manifested an objective intention to be bound by the terms of the second amended rescission agreement.

**COL 20.**       On May 15, 2020, Strassburger emailed Hoebler the second amended rescission agreement, pursuant to which his clients agreed to waive restitution in Lesseski's pending criminal case in exchange for Lesseski's agreement to relinquish and waive his ownership right to Concrete Coring. The second amended rescission agreement also provided that the agreement did not prejudice the rights of the Commonwealth of Pennsylvania with respect to any criminal matter against Lesseski. Strassburger via email informed Hoebler that—despite Hoebler's demands that Treadway and Concrete Coring cause the dismissal of Lesseski's criminal charges—

Treadway and Concrete Coring did not have the power to dismiss the criminal charges pending against Lesseski. (Ex. 9; H.T. 12/2/2020 (ECF No. 92) at 13-14.) Strassburger in the email dated May 15, 2020, asked Hoebler whether the second amended rescission agreement was acceptable to Lesseski. (Id.)

COL 21.     There is no evidence of record that counsel for Lesseski responded to the email dated May 15, 2020.

COL 22.     On June 17, 2020, Strassburger again emailed Hoebler and attached to the email the second amended rescission agreement. Strassburger wrote to Hoebler: "Do we have a deal? Please let me know." (Ex. 11.)

COL 23.     Based upon the foregoing undisputed facts of record, Treadway and Concrete Coring made an offer to settle this case with Lesseski via the email dated June 17, 2020, and the terms of that offer were set forth in the second amended rescission agreement attached to the email.

COL 24.     On June 17, 2020, counsel for Lesseski responded to Strassburger's email:

> **We do have a deal as we discussed.** I talked briefly with ADA Laura in Butler and we need to hammer things out. I'll plan a meeting with her ASAP.

(Ex. 11 (emphasis added).)

COL 25.     The evidence of record shows that Hoebler on behalf of Lesseski manifested an intention to be bound by the terms of the second amended rescission agreement, i.e., he accepted Strassburger's offer on behalf of Lesseski, when he wrote to Strassburger "[w]e do have a deal as we discussed." (Id.); see Am. Eagle, 584 F.3d at 584.

23

**COL 26.**     Counsel for Lesseski argues, however, that his email response dated June 17, 2020, was not an acceptance of Strassburger's offer because "the phrase 'as we discussed' limits the acceptance to include additional conditions discussed after the initial offer." (ECF No. 79 at 2.)

**COL 27.**     The Third Circuit Court of Appeals has explained:

> Under Pennsylvania law, a reply which suggests changes or additions to the terms of an offer may be either an acceptance or a counteroffer, and the question is for the jury to decide. DeMoss v. Beryllium Corp., 358 Pa. 470, 58 A.2d 70, 72 (1948). The common law rule is that "a reply to an offer which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." Restatement (Second) Contracts § 59 (1981); Hedden v. Lupinsky, 405 Pa. 609, 176 A.2d 406 (1962).

Honeywell, Inc. v. Am. Standards Testing Bureau, Inc., 851 F.2d 652, 659 (3d Cir. 1988).

**COL 28.**     Hoebler's use of the phrase "as we discussed[,]" however, does not suggest changes or additions to the terms of the offer that was set forth in the second amended rescission agreement.

**COL 29.**     The evidence of record shows that Strassburger and Hoebler exchanged emails about the settlement of this case on December 21, 2019, December 27, 2019, January 18, 2020, January 19, 2020, February 4, 2020, February 11, 2020, May 15, 2020, and May 20, 2020, and spoke to each other during telephone calls on May 20, 2020, and May 21, 2020. The discussions set forth in those emails and on the telephone—as described by Strassburger—are consistent with Strassburger's understanding of the settlement, i.e., his clients would waive their rights to seek restitution in Lesseski's criminal case and withdraw the crossclaims in this civil action in exchange for Lesseski signing the second amended rescission agreement.

**COL 30.**      Lesseski did not adduce any evidence of *other* discussions that occurred between the Hoebler and Strassburger prior to June 17, 2020, to show that Lesseski's "acceptance" of the offer made by Treadway and Concrete Coring was conditioned upon the withdrawal of the criminal charges or the resolution of the criminal case.

**COL 31.**      The only evidence of discussions between Hoebler and Strassburger about Lesseski's criminal charges shows that Strassburger communicated to Hoebler that his clients could not cause the dismissal of Lesseski's criminal case. On February 11, 2020, Hoebler emailed an "offer" to Strassburger demanding, among other things, the withdrawal of Lesseski's criminal charges. ***Strassburger rejected that offer.*** Then, on May 15, 2020, Strassburger wrote an email to Hoebler informing him that—as they previously discussed—Treadway and Concrete Coring did not have any control over Lesseski's criminal charges.

**COL 32.**      Based upon the foregoing, Treadway and Concrete Coring adduced evidence to show that Lesseski *via Hoebler* accepted their offer to settle this case pursuant to the terms of the second amended rescission agreement. All discussions that occurred between Hoebler and Strassburger prior to June 17, 2020, were consistent with Treadway's and Concrete Coring's understanding of the settlement, i.e., Treadway and Concrete Coring agreed to waive their rights to seek restitution in Lesseski's criminal case and stipulate to the dismissal of the crossclaims in this civil action in exchange for Lesseski signing the second amended rescission agreement. Lesseski did not adduce any evidence in response to show that he, *via Hoebler or otherwise*, engaged in discussions with Treadway or Concrete Coring to

create a triable issue of fact about whether Hoebler's response "[w]e do have a deal *as we discussed*" altered the material terms of Strassburger's offer, and, thus, was a rejection of, or counteroffer to, Strassburger's offer to settle this case. The evidence of record shows that to the extent Hoebler and Strassburger discussed Lesseski's criminal case prior to June 17, 2020, Strassburger informed Hoebler that Treadway and Concrete Coring did not have control over those criminal charges and could not cause their dismissal.

**COL 33.**    Lesseski also argues that there is evidence of record that Hoebler and Strassburger did not have a meeting of the minds to settle this case based upon Treadway's and Concrete Coring's promises to waive their rights to restitution in Lesseski's criminal case in exchange for Lesseski's promises to sign the rescission. Lesseski argues that Strassburger and Hoebler did not discuss restitution in their email exchanges and Hoebler did not discuss restitution until *after* a plea deal was reached with Pitchford. (ECF No. 95 ¶¶ 14, 16-17.)

**FOF 59.**    The evidence of record, however, does not support Lesseski's argument that a meeting of the minds did not occur between Hoebler and Strassburger with respect to restitution. First, Strassburger and Hoebler *explicitly* discussed restitution via email and on the telephone. On May 15, 2020, Strassburger first offered for Treadway and Concrete Coring to waive restitution in exchange for Lesseski agreeing to the second amended rescission agreement. (Ex. 9; H.T. 12/2/2020 (ECF No. 92) at 13-14.)  On May 20, 2020, Strassburger and Hoebler had a telephone call during which they discussed the waiver of restitution and the benefit it may confer upon Lesseski in connection with his plea negotiations. (H.T. 12/2/2020 (ECF No. 92) at 16-17.) On June

17, 2020, Strassburger emailed Hoebler and told him that his clients received the restitution form from Pitchford. Strassburger explicitly referred to the second amended rescission agreement, which detailed the promises of the parties thereto with respect to restitution (among other things), and attached the second amended rescission agreement to the email. Strassburger inquired to Hoebler "Do we have a deal?" (Ex. 11.) Thus, Hoebler knew that Strassburger's clients offered Lesseski, among other things, the waiver of restitution in Lesseski's criminal case in exchange for Lesseski signing the rescission agreement. Hoebler responded to Strassburger's email: "We do have a deal as we discussed." (Id.)

FOF 60.       Second, the evidence of record shows that when Pitchford and Hoebler engaged in plea negotiations, they both knew that Treadway and Concrete Coring agreed to not seek restitution from Lesseski in his criminal case. Pitchford testified that Treadway and Concrete Coring's waiver of their rights to seek restitution from Lesseski factored into her prosecutorial decisions with respect to Lesseski. (H.T. 12/15/2020 (ECF No. 96) at 17.) Based upon the emails exchanged and telephone calls between Hoebler and Strassburger, Hoebler during the plea negotiations knew that Treadway and Concrete Coring promised to waive their rights to restitution; indeed, after Hoebler agreed that Lesseski would plead no contest to two misdemeanors, he said to Pitchford: "No restitution; right?" (H.T. 12/15/2021 (ECF No. 96) at 20.) Pitchford commented to Hoebler that he was correct; Treadway told her that he would not seek restitution from Lesseski. (Id. at 20-22.) Here, Pitchford and Hoebler understood prior to the finalization of the plea deal that Treadway and Concrete Coring would waive restitution. But for the settlement there would be no reason for Treadway or Concrete

Coring to waive restitution. Thus, whether Pitchford and Hoebler *explicitly* discussed restitution during their plea negotiations does not negate the meeting of the minds that occurred between Strassburger and Hoebler with respect to restitution via their email exchanges on June 17, 2020.

      **COL 34.**      Based upon the evidence of record, a reasonable jury could only find that on June 17, 2020, Strassburger and Hoebler—on behalf of their respective clients—manifested an intention to be bound by the terms of the second amended rescission agreement, i.e., Strassburger on behalf of Treadway and Concrete Coring made an offer to settle this case, which was accepted by Hoebler on behalf of Lesseski.

      **b.**  **Sufficiently Definite Terms**

      **COL 35.**      "'If all…the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.'" Williams v. Patterson-UTI Drilling Co. LLC, No. 3:12-CV-134, 2013 WL 5274860, at *1 (M.D. Pa. Sept. 17, 2013) (quoting Cal. Sun Tanning USA, Inc. v. Electric Beach, Inc., 369 F. App'x 340, 347 (3d Cir. 2010)).

      **COL 36.**      Here, Treadway and Concrete Coring satisfied their burden to show that the terms of the agreement with Lesseski are sufficiently definite to be enforced.

      **COL 37.**      The evidence of record shows that Strassburger in his email to Hoebler dated June 17, 2020: (a) referred to the second amended rescission agreement as a "settlement proposal[;]" (b) attached the second amended rescission agreement; and (c) asked Hoebler whether they had a deal. (Ex. 11.)

COL 38.     In the second amended rescission agreement, Treadway and

Concrete Coring agreed, among other things, to waive their rights to seek restitution

from Lesseski with respect to his criminal case and to file a stipulation of dismissal with

respect to the crossclaims in this case in exchange for Lesseski agreeing to, among

other things, waive any ownership interest he has or had in Concrete Coring. (Ex. 9.)

COL 39.     As discussed above, Hoebler on behalf of Lesseski accepted

Strassburger's offer made on behalf of Treadway and Concrete Coring, (which explicitly

referred to the second amended rescission agreement), when he replied to

Strassburger's email dated June 17, 2020.

COL 40.     Lesseski does not argue that the terms of the second amended

rescission agreement are too indefinite to be enforced; rather, he argues that his

acceptance of Strassburger's offer—if any—was conditioned upon the resolution of his

criminal case. Hoebler argues that the court should find the language in his acceptance

"as we discussed" rendered the acceptance *conditional* on the resolution of the criminal

charges in Butler County. As discussed above, however, Lesseski did not adduce any

evidence of record to support a reasonable inference that prior to June 17, 2020,

Hoebler told Strassburger that the settlement of this civil case was contingent upon the

resolution of Lesseski's criminal case.

COL 41.     In any event, the second amended rescission agreement is not

"'impossible to understand and enforce[.]'" Am. Eagle, 584 F.3d at 584 (quoting

Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 665 (Pa. 1956)).

COL 42.     The second amended rescission agreement is two and one-half

pages and contains nine paragraphs. The obligations of the parties to the agreement

are "'certain.'" Id. (quoting Lombardo, 123 A.2d at 666). Treadway and Concrete Coring agreed to stipulate to the dismissal of the crossclaims in this case and waive their rights to seek restitution from Leseski in his criminal case in exchange for Lesseski's agreement to stipulate to the dismissal of the crossclaims in this case and waive any interest of right in the ownership of Concrete Coring. (Ex. 9.)

**COL 43.**     Based upon the foregoing, the terms of the agreement reached by Treadway and Concrete Coring and Lesseski, which are set forth in the second amended rescission agreement, are sufficiently definite to be enforced.

**COL 44.**     Treadway and Concrete Coring and Lesseski each manifested an objective intention to be bound by the second amended rescission agreement. The terms of the second amended rescission agreement are sufficiently definite to be enforced. Lesseski received the benefit of the bargain when Treadway and Concrete Coring waived their rights to restitution in his criminal case. That waiver was significant in enabling Lesseski to obtain a favorable resolution to the criminal charges against him. There is no dispute about consideration in this case. The motion to enforce settlement will, therefore, be granted.

### V.     Motion for Sanctions (ECF No. 83)

Treadway and Concrete Coring request the court to impose sanctions upon Lesseski and Hoebler under Federal Rule of Civil Procedure 11 because they filed a response in opposition to the motion to enforce sanctions without a legitimate basis to do so. (ECF No. 83.)

Federal Rule of Civil Procedure 11(b)(1) provides:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later

advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery….

FED. R. CIV. P. 11(b)(1)-(3). One district court has explained:

> Rule 11 authorizes imposition of sanctions where any pleading, motion or other paper was presented for an improper purpose, e.g., "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Landon v. Hunt, 938 F.2d 450, 452 (3d Cir.1991). Rule 11 sanctions are based on " 'an objective standard of reasonableness under the circumstances.' " Id. at 453 n. 3 (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir.1988)); Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir.1991) ("The legal standard to be applied when evaluating conduct allegedly in violation of Rule 11 is reasonableness under the circumstances").

> "Rule 11 is intended for only exceptional circumstances." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir.1987). A "district court must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process." Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F,2d 535, 540 (3d Cir.1985).

Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. CIV.A .10-948, 2011 WL 284620, at *2 (W.D. Pa. Jan. 25, 2011).

The circumstances presented in this case are not *exceptional*. Lesseski in the response in opposition to the motion to enforce settlement agreement argues that his counsel's response to Strassburger's email was a rejection or counteroffer. Although

Lesseski's response in opposition to the motion to enforce settlement was unsuccessful for the reasons set forth in these findings of fact and conclusions of law, the arguments raised by Hoebler do not warrant the imposition of sanctions. In other words, the court does not find that Hoebler or his client violated Rule 11 to the extent sanctions would be appropriate for imposition upon him or his client. The motion for sanctions will, therefore, be denied.

## VI.     Conclusion

Treadway and Concrete Coring and Lesseski, via their respective counsels, each manifested an objective intention to be bound by the terms of the second amended rescission agreement. The terms of the second amended rescission agreement are sufficiently definite to be enforced. Lesseski received the benefit of the agreement when Treadway and Concrete Coring did not seek restitution in his criminal case, and Pitchford testified that decision was a factor in the plea agreement, which enabled Lesseski to obtain a favorable outcome of the criminal charges pending against him in Butler County. There is no dispute about consideration in this case. Under those circumstances, the motion to enforce settlement (ECF No. 76) will be granted. Thus, the motion to compel (ECF No. 65) will be denied as moot. The motion to stay (ECF No. 70) will also be denied as moot because Lesseski's criminal charges upon which that motion is based are resolved. Treadway, Concrete Coring, and Lesseski will be ordered to execute the second amended rescission agreement. The crossclaims are rendered moot by the settlement. The motion for sanctions (ECF No. 83) will be denied for the reasons stated herein. An appropriate order will be entered.

BY THE COURT,

Dated: March 4, 2021                    /s/ JOY FLOWERS CONTI
                                        Joy Flowers Conti
                                        Senior United States District Court Judge